UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC MASON,

        Plaintiff,

        v.                      Case No. C-1-07-584

STEELCRAFT, INC.,

        Defendant.

## ORDER

This matter is before the Court upon motions for summary judgment filed by plaintiff Eric Mason and defendant Steelcraft, Inc. (Steelcraft) (docs. 10, 19), the parties' opposing memoranda (docs. 23, 28), and their reply memoranda (docs. 27, 29). The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 22, 26 ). Also pending before the Court are defendant's motion to strike plaintiff's sur-reply to defendant's reply brief (doc. 31), plaintiff's motion for leave to file his sur-reply (doc. 33), and defendant's motions to file notice of supplemental authority *instanter* (docs. 34, 37).

### I. Allegations of the Complaint

Plaintiff makes the following allegations in the complaint: Plaintiff was employed full-time by defendant during the period May 30, 2000 to December 7, 2007. On November 20, 2006, plaintiff experienced chest pains on his way to work for his 3:00 p.m. to 11:30 p.m. shift. He drove directly to the Emergency Room at Good Samaritan Hospital, where, prior to his release on November 22, 2006, he underwent a number of diagnostic tests, including an

1

angiogram. He called Steelcraft's automated hotline on both November 20 and 21, 2006, and advised the company that he required "Family Medical Leave." He was not scheduled to work during the period November 23 to November 26, 2006, which was Steelcraft's Thanksgiving holiday.

On November 27, 2006, plaintiff returned to work and met with the company nurse, Lorraine Richardson. Plaintiff informed her about the hospitalization and chest pains and showed her the discharge instructions from Good Samaritan Hospital. Plaintiff requested to return to work but was instructed by the nurse to see his personal physician and obtain a release to return to work. Richardson gave plaintiff a form to request short-term disability and a Certification of Health Care Provider in order to request FMLA leave.

On November 27, 2007, during the meeting with Richardson, Human Resources Director Carl Parson came into the office. Plaintiff informed Parson about his hospitalization and chest pains. Parson informed him that if he had not come in that day, he would have been fired for lack of notice that prior week. Plaintiff saw his regular physician the following day and returned to work on December 1, 2006, with the completed FMLA and short-term disability paperwork, which Human Resources Manager Charles Hughley told him to leave on the desk of his supervisor, Mike Becker. On Tuesday, December 5, 2006, plaintiff reported for work but was not permitted to return to work until he obtained a completed release to return to work from his physician. The following day, he reported to work with the release and was permitted to work. During the workday, he was called into a meeting with Richardson, Parson, and Hughley and questioned about his absences and paperwork. On December 7, 2006, plaintiff reported for work and was terminated for violating Steelcraft's attendance policy.

Based on these allegations, plaintiff claims that Steelcraft interfered with his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1), by applying its internal attendance policy to his absences, for which he was entitled to FMLA leave and some of which were caused by Steelcraft's request that he obtain a full work release from his physician and a Certification of Health Care Provider (which he was entitled to at least 15 days to obtain), and by terminating his employment based on FMLA-protected absences.

## II. Miscellaneous Motions

Defendant moves to strike plaintiff's sur-reply to defendant's reply brief in support of its motion for summary judgment (doc. 31). Defendant argues that Local Rule 7.2 expressly allows for only three memoranda on any given motion and does not permit the filing of a sur-reply. Defendant further argues that the issues in this case have been extensively briefed so that no additional filings are necessary. Plaintiff asserts that he filed his short sur-reply in order to respond to defendant's citations of additional authority in its reply brief. Because the sur-reply is limited to the discussion of the additional authority discussed in defendant's reply brief, and because plaintiff has filed a motion for leave to file his sur-reply in accordance with the Local Rules (doc. 33), the Court will grant plaintiff leave to file his sur-reply and will deny defendant's motion to strike the sur-reply.

Defendant also moves for leave to file a notice of supplemental authority *instanter* (doc. 34), which plaintiff opposes (doc. 35). Defendant wishes to bring to the Court's attention final regulations for the FMLA published by the Department of Labor (DOL) on November 17, 2008, which became effective on January 16, 2009. Plaintiff opposes defendant's request that the Court take notice of the final regulations because he claims the regulations should not be applied

retroactively to his discharge and a provision of the regulations concerning employee notice for unforeseeable FMLA leave appears to conflict with the Sixth Circuit's ruling in *Cavin v. Honda of Am., Mfg., Inc*., 346 F.3d 713 (6th Cir. 2003), and therefore might not be given judicial deference. In his opposition to defendant's motion, plaintiff goes on to address how he believes the regulations would impact his claims were they to be applied retroactively to him.

Because the final regulations have now become effective, the Court finds that it is appropriate to consider what impact they may have on plaintiff's FMLA claim. The Court will therefore grant defendant's motion to file notice of supplemental authority *instanter* (doc. 34).

Finally, defendant recently filed another motion to file notice of supplemental authority (doc. 37). Defendant seeks to bring to the court's attention an Eight Circuit decision issued in December 2008. Plaintiff has not yet responded to defendant's submission. Accordingly, the Court will deny defendant's motion to supplement the record with this latest decision from another circuit.

### III. Undisputed Facts

1. Steelcraft is a manufacturer of steel doors and frames located in Blue Ash, Ohio. It has approximately 800 employees, of whom approximately 650 are hourly employees.

2. Plaintiff was employed full-time with Steelcraft during the period May 30, 2000 until December 7, 2006.

3. A majority of Steelcraft's hourly employees are represented by the United Steelworkers of America AFL-CIO Local 7697 (Union). Steelcraft and the Union are parties to a collective bargaining agreement (CBA), which includes an Absence Control Policy. Under the Absence Control Policy, all employees are required to call the absence control line to report any absence, excused or unexcused, including absences related to "Family Medical Leave." All absences must be reported to the absence control line within two hours of the start of the employee's shift. However, as a practical matter, employees who are unable to call the absence control line for some reason, such as because they are gravely ill, are excused from calling.

4. Under the Absence Control Policy, absences are classified as "excused" or "unexcused." Excused absences include absences pursuant to the FMLA. Employees do not receive an attendance point for an excused absence. An employee who accumulates 15 points is subject to termination under the policy.

5. At any given time, approximately 8% to 11% of Steelcraft's workforce is absent for any given reason, including both excused and unexcused absences. Thus, on any given day, approximately 50 to 70 of Steelcraft's hourly employees may be absent.

6. At the time of his termination, plaintiff was employed as a second-shift bargaining unit

employee on the "LF" line.

7. During 2006, plaintiff called the absence control line no fewer than fifteen times to notify Steelcraft of his need for FMLA leave. Prior to November 20, 2006, plaintiff had accumulated 13.5 attendance points.

8. On November 20, 2006, plaintiff suffered chest pains on his way to work and drove to Good Samaritan Hospital, where he was seen first in the Emergency Room and then admitted later that evening. He was kept under observation the following two days, Tuesday and Wednesday, November 21 and 22, and he underwent diagnostic tests, which were negative. Plaintiff was told to follow up with his doctor following his release from the hospital.

9. On Monday, November 20, plaintiff called the absence control line at 3:08 p.m. On Tuesday, November 21, he called it at 2:18 p.m. On each occasion, he gave the reason for his absence as "FMLA." He did not include any other information regarding the reason for his absence.

10. Plaintiff did not call the absence control line on Wednesday, November 22. Because he failed to notify Steelcraft of his absence via the absence control line, Steelcraft had no knowledge of his whereabouts.

11. Steelcraft did not schedule work for Thursday or Friday, November 23 and 24, because of the Thanksgiving holiday. Plaintiff was not scheduled to work the weekend of Friday and Saturday, November 25 and 26.

12. Plaintiff came to work on his next scheduled working day, Monday, November 27, and clocked in at 3:17 p.m. He met with Richardson, gave her his hospital discharge

instructions, and told her that he had been in the hospital for chest pains. Richardson gave him FMLA and short-term disability forms. Plaintiff was informed that he was not permitted to return to work until he had received a release from his doctor. Plaintiff did not call the absence control line on this date.

13. Plaintiff did not call the absence control line on either Tuesday, November 28, or Wednesday, November 29.

14. Plaintiff called the absence control line on Thursday, November 30, at 3:50 p.m. and on Friday, December 1, at 1:38 p.m. and gave "FMLA" as the reason for his absence on both occasions.

15. On either Thursday, November 30, or Friday, December 1, plaintiff came to the plant and met with Carl Parson, the Labor Relations Manager. Plaintiff told Parson that he had been hospitalized. Parson told plaintiff that they had prepared papers for his termination and he needed to get his paperwork in.

16. On Monday, December 4, plaintiff called the absence control line at 3:05 p.m. and gave as the reason for his absence "FMLA."

17. On Tuesday, December 5, plaintiff clocked in at 3:09 p.m. and clocked out at 3:58 p.m. He was not permitted to work a full shift because he did not have a completed return to work form.

18. Plaintiff returned to Steelcraft on Tuesday, December 6, with a return to work certification completed by his physician, Dr. Taylor. He was permitted to work a full shift.

19. By no later than December 6, 2006, plaintiff provided Steelcraft with several

Certification of Healthcare Provider forms relative to his absences.

20. Plaintiff's FMLA leave was approved by Steelcraft by at least December 6. He was retroactively granted FMLA leave for each of the previous ten working days from Monday, November 20, through Tuesday, December 5.

21. Plaintiff was assessed a total of two points for failure to call the absence control line on November 22, 27, 28 and 29. When added to the 13.5 points he had previously accumulated, he had a total of 15.5 attendance points, which under the terms of the CBA and Absence Control Policy required his termination from employment.

22. On Wednesday, December 7, plaintiff reported for work and was terminated shortly after clocking in by his Team Leader Rod Villari and Process Manager Steve Strassinger in the presence of his union representative. The disciplinary notice states as the reason for termination, "Excessive absenteeism, 15-1/2 points."

23. After his termination, plaintiff filed a grievance protesting his termination. In his third-step answer denying the grievance, Parson cited plaintiff's "undocumented absences" and stated "Grievant's numerous interactions with members of the HR Staff did not produce the necessary documentation covering his absences."

## IV. The Parties' Motions for Summary Judgment

Defendant asserts that it is entitled to summary judgment on plaintiff's FMLA claim as a matter of law. Defendant does not deny that plaintiff was an eligible employee and that he was entitled to FMLA leave. Defendant disputes, however, that it denied plaintiff an FMLA benefit to which he was entitled. Defendant claims that plaintiff was never disciplined for his requests for FMLA leave and that his termination is unrelated to any of his requests for such leave.

8

Rather, defendant asserts that it terminated plaintiff's employment based on his failure to follow reasonable and necessary company policies with which he could have complied but chose not to. Specifically, defendant contends that plaintiff either deliberately or negligently failed to comply with its Absence Control Policy, which requires bargaining unit employees to notify Steelcraft of any absences within two hours of the start of the employee's shift and allows exceptions only if the employee "is clearly physically unable to call," which is separate from its FMLA Policy, which requires an employee to give notice "as soon as practicable under the circumstances" in the event of the need for unforeseen leave. Defendant contends that in the event it is not entitled to summary judgment, a question of material fact exists so that plaintiff is not entitled to summary judgment in his favor.

Plaintiff moves for summary judgment on his FMLA claim on the issue of liability. Plaintiff claims that Steelcraft denied him FMLA benefits to which he was entitled by assigning him points for violating its Absence Control Policy on days for which FMLA leave was approved and for which he gave legally sufficient notice, thereby resulting in his termination. Plaintiff claims that his serious health condition was clearly unforeseeable. He argues that defendant's explanation that it terminated him for failure to call in on four days for which it assigned him attendance violation points, and not for taking FMLA leave, does not absolve it of liability for interference with his FMLA rights. Rather, plaintiff claims that the company's call-in requirement is inextricably intertwined with the FMLA notice requirements and that defendant's call-in procedure improperly imposed an additional layer of notice as a precondition to his exercise of his FMLA rights. Plaintiff claims that although he gave appropriate notice on all four dates in issue, if only two of the half-points were wrongly assessed, his discharge

9

resulted from the exercise of his FMLA rights.

. **V. Summary Judgment Standard**

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." ***Scott v. Harris***, 127 S. Ct. 1769 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***Id.*** at 249 (citing ***Cities Serv.***, 391 U.S. at 288-289). If the evidence is merely colorable, ***Dombrowski v. Eastland,*** 387 U.S. 82, 84 (1967), or is not significantly probative, ***Cities Serv.***, 391 U.S. at 290, judgment may be granted. ***Anderson***, 477 U.S. at 249.

## VI. Applicable Law

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines the term "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The FMLA prohibits an employer from interfering with the exercise of, or the attempted exercise of, any right provided under that subchapter. 29 U.S.C. § 2615(a)(1). To establish an interference claim, the plaintiff must show that (1) he was an eligible employee, (2) the defendant is a covered employer, (3) the plaintiff was entitled to leave under the FMLA, (4) he gave the employer notice of his intent to take leave, and (5) the employer denied him FMLA benefits or interfered with FMLA rights to which he was entitled. *Hoge v. Honda of America Mfg., Inc*., 384 F.3d 238, 244 (6th Cir. 2004) (citing *Cavin*, 346 F.3d at 719).

Nothing in the FMLA imposes a duty on the employer to affirmatively grant leave without a request or notice by the employee. *Brohm v. JH Properties, Inc*., 149 F.3d 517, 523 (6th Cir. 1998). Rather, to invoke the protection of the FMLA, an employee must inform his employer of the need for leave and the qualifying reason for the leave. *Id*. (citing *Manuel v. Westlake Polymers Corp*., 66 F.3d 758, 762 (5th Cir. 1995)). The Sixth Circuit in *Cavin* explained however, that "[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA." 346 F.3d at 723-24 (citing *Hammon v. DHL Airways, Inc*., 165

F.3d 441, 450 (6th Cir. 1999)); *see* 29 C.F.R. §§ 825.302(c), 825.303(b). Rather, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Cavin*, 346 F.3d at 723 (citing *Brohm*, 149 F.3d at 523) (quotation omitted)). "[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Id*. at 723-24 (citing *Hammon,* 165 F.3d at 451).

The eligible employee must also give the employer this substantive notice within the requisite time frame. The time frame depends on the foreseeability of the required leave. Title 29 C.F.R. § 825.302 sets forth notice requirements where the need for leave is foreseeable. Where the need for FMLA leave is not foreseeable, 29 C.F.R. § 825.303 specifies the time frame and the method for providing notice. At the time of the events in issue, § 825.303 provided as follows:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.
>
> (b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means. . . . . The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee . . . will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the

12

exigencies of the situation.

The DOL issued new regulations which became effective in January of this year. Section 825.303(a) was modified to eliminate the expectation that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave to provide that "It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." A new subsection (c) was added entitled "Complying with employer policy." It states as follows:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

A new subsection (e) was also added to § 825.304, "Employee Failure to Provide Notice," which states as follows:

> An employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements. If an employer does not waive the employee's obligations under its internal leave rules, the employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking FMLA leave and the rules are not inconsistent with § 825.303(a).
>
> An employee on FMLA leave may be required to report periodically on the employee's

13

status and intent to return to work. 29 C.F.R. § 825.309 (1995). The employer's policy regarding such reports may not be discriminatory and must take into account all of the relevant facts and circumstances related to the individual employee's leave situation. In addition, an employee may be required to provide medical certification to support an FMLA leave. Title 29 C.F.R. § 825.305 governs medical certification. It provides:

> (a) An employer may require that an employee's leave . . . due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee . . . An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.300(c). An employer's oral request to an employee to furnish any subsequent medical certification is sufficient.
> . . . .
> (d) At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. . . . . If the employee fails to provide the employer with a complete and sufficient certification . . . the employer may deny the taking of FMLA leave. . . . .

Title 29 C.F.R. § 825.311(b) (1995), which was in effect at the time of plaintiff's absences, provided as follows concerning the employee's need to provide certification where the need for leave is unforeseeable:

> When the need for leave is not foreseeable . . . an employee must provide certification . . . within the time frame requested by the employer (which must allow at least 15 days after the employer's request) or as soon as reasonably possible under the particular facts and circumstances. . . . .

The adequacy of notice is a mixed question of fact and law. *Cavin*, 346 F.3d at 723. The question of whether notice was given and, if so, what the notice consisted of and when it was provided is a question of fact, while the question of whether the notice satisfied statutory requirements is a question of law. *Id*.

## VII. Resolution

The parties' summary judgment motions raise the issues of (1) whether defendant could, consistent with the FMLA, terminate plaintiff's employment based on his failure to comply with defendant's internal procedures for reporting absences, and (2) whether there is no genuine issue of material fact that plaintiff violated those procedures. Turning to the first issue, plaintiff claims that in the Sixth Circuit, an employer may not impose procedural requirements for taking unforeseeable leave that go beyond what is required by the FMLA and the governing regulations. Plaintiff relies on the decision in *Cavin*, 346 F.3d at 723-24, to support his position. In *Cavin*, the plaintiff was terminated for violating certain company policies, including a policy that required him to call in his need for leave to the leave coordinator, instead of to the security guard as he had done. The Sixth Circuit made clear that under the regulations then in effect, the FMLA did not permit an employer to limit an employee's FMLA rights by denying them whenever an employee failed to comply with internal procedures that were stricter than those contemplated by the FMLA. *Id*. at 720. The Court held that the employer in that case therefore could not interfere with the plaintiff's rights by enforcing its stricter notice requirements to deny the plaintiff benefits to which he otherwise might have been entitled under the FMLA. *Id*. at 723.

Defendant seeks to distinguish this case from *Cavin* by arguing that this is not a notice case because by granting plaintiff the entirety of his requested FMLA leave, defendant determined that plaintiff either gave appropriate FMLA notice or the notice requirement was waived, whereas in *Cavin* there was an issue as to whether the plaintiff had provided appropriate

15

notice of the need for FMLA leave and whether he was allowed subsequent FMLA leave. Defendant also argues that *Cavin* is factually dissimilar because the plaintiff there provided notice, albeit to the guard station rather than to the leave department, whereas plaintiff here allegedly provided no notice at all for four days of absences. Finally, defendant relies on decisions from other circuits for the proposition that an employee's failure to comply with an employer's call-in procedure constitutes a reason for termination that is unrelated to the employee's requested FMLA leave. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004); *Lewis v. Holsum of Fort Wayne, Inc*., 278 F.3d 706 (7th Cir. 2002).

The cases from other circuits that defendant cites for its argument that failure to comply with an employer's call-in procedure constitutes a reason for termination that is unrelated to the employee's requested FMLA leave do not support its position. The court in *Bones*, 366 F.3d 869, specifically distinguished Tenth Circuit law from Sixth Circuit law in holding that the plaintiff's request for FMLA leave did not shelter her from her obligation to comply with her employer's absence policy. The Tenth Circuit expressly declined to follow the Sixth Circuit, which, it noted, "has explicitly made notice part of its test for interference with FMLA rights." *Id*. at 877 n.2. The decision in *Lewis,* 278 F.3d 706, where the court held that the plaintiff's termination for failure to comply with the employer's attendance policy did not violate the FMLA, is not helpful because that case involved a complete failure by the plaintiff to provide any type of notice whatsoever on the days in question, despite her clear ability to comply with applicable company rules and policies.

Moreover, defendant's attempts to distinguish *Cavin* from this case on the basis of their facts are unavailing. Like the plaintiff in *Cavin*, although plaintiff here did not follow internal

16

company procedures, he gave notice to Steelcraft on at least one of the days in question and there are factual questions as to whether he was excused from calling in on one of the other days.

In short, defendant has not shown that *Cavin* is inapplicable to this case on any of the above-stated grounds. The decision in *Cavin* supports plaintiff's position that under Sixth Circuit law in effect at the time of his absences, defendant could not, consistent with the FMLA, terminate plaintiff's employment based on his failure to comply with internal procedures for reporting absences that were stricter than the notice requirements of the FMLA.

It is questionable, however, whether *Cavin* remains good law in view of the changes in the regulations which took effect in January of this year, and specifically in light of the addition of subsection (c) to 29 C.F.R. § 825.303, which requires an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. Plaintiff argues that § 825.303(c) cannot be applied retroactively to his absences. *See Bauer v. Varity Dayton-Walther Corp*., 118 F.3d 1109, 1111 n.1 (6th Cir. 1997). He further argues that in any event, the new regulations do not weaken his case because they make allowance for emergency health situations and unusual circumstances, which is what occurred on November 22nd and November 27th. Defendant maintains that its call-in policy is consistent with § 825.303(c) and its application to plaintiff did not violate his FMLA rights.[1]

Pursuant to *Bauer*, it appears that the newly-enacted regulations cannot be applied to this

---

[1]Defendant also argues that its internal policies are consistent with the former version of § 825.309(a) (now codified at 29 C.F.R. § 825.311(a)), which required an employee on FMLA leave to report periodically on his status and intent to return to work. The Court need not address this argument on summary judgment in light of the existence of other issues which preclude a grant of summary judgment..

17

case and that *Cavin* controls the outcome. In any event, regardless of whether *Cavin* and the regulations in effect at the time of plaintiff's leave or the new regulations are applied, the outcome of the summary judgment motions is the same. That is, summary judgment is not warranted because there are questions of material fact as to whether unusual circumstances excused plaintiff's failure to comply with defendant's notice requirements on at least two of the days in question - November 22, when he was in the hospital undergoing what he describes as invasive procedures, and November 27, when he reported to work but was told by Richardson that he could not return to work without submitting completed paperwork. Specifically, the Court finds that the following issues cannot be resolved on summary judgment:

- Whether plaintiff was precluded from calling in to work on November 22 in a timely manner due to his medical condition.

- Whether plaintiff gave sufficient, timely notice of his need for FMLA leave on November 22 by reporting to work on the next regular work day, November 27, and informing the nurse about his hospitalization and giving her his hospital discharge papers.

- Whether plaintiff was excused from calling the absence control line on November 27th in view of the fact that he reported for work and defendant's agent, Richardson, refused to allow plaintiff to work his shift because he did not have the necessary completed paperwork.

- Whether defendant makes exceptions to the call-in procedure if it otherwise knows about the employee's absence.

- Whether plaintiff was required to give additional notice to defendant of his absences on November 28 and 29 after the nurse told him he could not return to work until he had completed the necessary FMLA paperwork and he had been released for work by his doctor, or whether the circumstances were such that defendant was on notice that plaintiff would be absent these two days.

In light of these unresolved issues, summary judgment cannot be granted in favor of either party.

## VIII. Conclusion

Plaintiff's motion for leave to file sur-reply (doc. 33) and defendant's motion for leave to file notice of supplemental authority *instanter* (doc. 34) are **GRANTED.** Plaintiff's motion for summary judgment (doc. 10), defendant's motion for summary judgment (doc. 19), defendant's motion to strike plaintiff's sur-reply to defendant's reply brief in support of its motion for summary judgment (doc. 31), and defendant's motion for leave to file notice of supplemental authority *instanter* (doc. 37) are **DENIED**. This case shall proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court